# CURRENT OHIO COURT of APPEALS CASES
## Weekly Advance Abstract Opinions

## EPITOMIZED OPINIONS
### Published only in the Abstract

SEYMOUR et v. STATE.

Ohio Appeals, 4th Dist., Pickaway Co.

Decided Dec. 7, 1927.

First Publication of this Opinion.

Syllabus by Editorial Staff.

193. BURGLARY—705. Larceny—1265. Weight of evidence—Facts, that building was burglariously entered, goods stolen therefrom and the possession by accused, soon thereafter, of goods stolen, are competent evidence to go to jury, and, in connection with other circumstances, indicative of guilt, may afford strong presumption of fact of guilt of accused and warrant jury in finding him guilty of both burglary and larceny. Methard v. State, 19 OS. 363 approved and followed.

Error to Common Pleas.

Judgment affirmed.

Irwin F. Snyder, Circleville, for Seymour.

E. A. Brown, Circleville, and F. N. R. Redfern, Adelphi, for State.

FULL TEXT.

MIDDLETON, PJ.

The plaintiffs in error were charged under an indictment in the Court of Common Pleas with the crime of burglary and larceny and on trial to a jury in that court were found guilty of said charge. The indictment aforesaid charged in substance that said plaintiffs in error in the night season of the seventh day of March, 1927, did unlawfully break and enter a certain poultry house and did unlawfully steal and carry away from said house thirty-nine chickens of the value of $44.16.

The only contention made in this proceeding is that the verdict of the jury so as aforesaid returned was and is not supported by sufficient evidence. The record of the trial is one of unusual length and we regard it as unnecessary to discuss in detail the incriminating circumstances testified to by the witnesses called by the state in the trial. It is sufficient to say that it was the privilege and right of the jury to weigh the evidence and to act upon the same as they saw proper. If the jury believed all of the testimony of the witnesses presented by the state the evidence so adduced fully warranted the conclusion that the plaintiffs in error were guilty of the larceny of the chickens described in the indictment. The evidence in respect to the charge of burglary, however, is very limited and consists largely of the proof that the chicken house in question was forcibly broken open and that this breaking would only be necessary in the night season for the reason that during the day the chicken house was kept open. It appears that there were two openings in this chicken house, one being a window and the other a door described by one witness as being about five and a half by three feet. This door the evidence shows was locked each night and opened the next morning. It was further shown in the evidence that the property in question was located near a public highway and that it was within plain sight of people residing in that locality, the nearest resident thereto living about one-quarter of a mile from the scene of the alleged crime. The evidence further shows that the building was probably entered through the window, from which had been torn a wire netting and the glass in the window broken. It is also in evidence that the tracks of a motor vehicle were discovered, indicating that said vehicle had been backed from the public road in question up against a fence near the chicken house, and human tracks were to be seen leading from the chicken house to the machine described. Under this state of the evidence this court is not justified in saying that from the facts mentioned the jury were clearly wrong in determining that a burglary was committed when the chickens were stolen. It is said in the case of Methard v. State, 19 OS. 363, 368:

"The facts that a building was burglariously entered, goods stolen therefrom, and the possession by the accused soon thereafter of the goods stolen, are competent evidence to go to the jury and, in connection with other circumstances, indicative of guilt, such as giving a false account or refusing to give any account of the manner in which or the means by which he came into possession of the stolen goods, they may afford a strong presumption of fact of the guilt of the accused and warrant the jury in finding him guilty of both the burglary and larceny."

The plaintiffs in error undertook to account for their possession of certain chickens which were sold by them to a dealer on the eighth day of March, 1927, and claimed that the chickens so sold were the property of the mother of one of them, and were supported in this contention by the testimony of several witnesses. It appears, however, that such testimony in some very material matters was not as convincing as it might be and was not corroborated by other witnesses as it might fairly be expected it would be. For instance, the rental contract between the mother of the plaintiff in error mentioned and one William McGinnis, who was the owner of the property on which the mother resided at the time she is alleged to have sold these chickens, provided as she stated that she was to have all incubator chickens which she might purchase. The purpose of this testimony is evident. It was given to account for the fact that she was able to dispose of so many chickens without the knowledge of her landlord. On the witness stand, however, McGinnis denied that there was any understanding of that sort and insisted that she was to raise chickens on the halves and he was to furnish the feed.

(Continued on Page 52)

## PUBLISHER'S COLUMN

# The Ohio Law Abstract

Entered as second class matter, February 28, 1923,
at the Post Office, Cleveland, Ohio
under the Act of March 3, 1879.

Issued Every Saturday　　　·　50 Weeks of the Year

### SUBSCRIPTION PRICES AND TERMS

Weekly Edition, One Year (50 issues) Payable in
Advance ..................................... $15.00
Discount for advance payment $3.00, making the
net price ..................................... 12.00
Including Quarterly Digest, to paid subscribers,
no extra charge.
Including Binding of Weekly Parts at end of year,
if paid in advance, net........................ 13.50
Including One Annual Digest, at end of year, and
binding of weekly parts, paid in advance, net.. 16.00
Including Cinque Digest and Year's Subscription..$18.00
Single Numbers ................................ .35
Receiving Abstract after expiration date, considered as
authorized continuation of subscription.

### THE LAW ABSTRACT COMPANY
Office, Editorial Rooms and Library, 13916 Euclid Ave.
Cleveland, O.

### STAFF

Sam H. Torrey.....................Circulation Manager
Jay F. Laning........................Business Director
Sheldon R. Laning...................Editorial Director

---

The Law Abstract Annual Digest of 1927 decisions, just completed, shows by a count of its Table of Cases, that the paper reported over 1,800 cases during the year; 800 of which were those of the Court of Appeals. To show the efficiency of the Abstract and its Digests, we refer to the fact that the Ohio Appellate Reports for 1927, part of Vol. 22 and Vols. 23 and 24 report 269 cases published within the year 1927. The recent summary by the Ohio Supreme Court of its business for 1927, shows that it decided 550 cases from the Court of Appeals, on motion to certify. This figure shows that it decided 281 cases more than were officially reported.

This accounts for the over 500 more Appeals cases reported in the Abstract than elsewhere. They were the cases decided on motion to certify and not reported and mostly of cases that were not taken up to the Supreme Bench. The Abstract thus made it possible for the Bench and Bar of the state to have access to over 500 authoritative cases, that without it would nearly all have gone into oblivion.

This comparison is not made for the disparagement of any other publication. The Abstract aims to cover the entire field of Ohio case law reporting to its fullest possible extent, while others each do some select part of it. They are doing good work and are creditably conducted. There is room for all.

(Continued from Page 51)
Without going further into the details of all the evidence in this case it is sufficient to say that under the well settled rule that the verdict must be clearly wrong before a reviewing court may interfere on the ground that it is against the manifest weight of the evidence, we are impelled to affirm the judgment.

(Mauck, J., concurs.)